EAST VOLLENTINE COURTS, INC., Plaintiff-in-Error, v. JAMES L. FOUST, d/b/a READ SALES COMPANY, Defendant-in-Error— 376 S. W. (2d) 320.

Western Section. May 29, 1963.

Certiorari Denied by Supreme Court September 11, 1963.

450

John S. Porter, Burch, Porter & Johnson, Memphis, for plaintiff in error.

Braxton Gandy, Edward W. Kuhn, McDonald, Kuhn, McDonald, Crenshaw & Smith, Memphis, for defendant in error.

CARNEY, J. Plaintiff corporation, East Vollentine Courts, Inc., the owner of an apartment building located at 1022 North Watkins Street in Memphis, Tennessee, brought suit against the defendant, Read Sales Company, for damages from fire allegedly caused to plaintiff's building as a result of welding negligently done on the premises by the defendant's employee, Timothy Cox. It was admitted that the amount of fire damage was $14,000.00.

The case was tried before the Circuit Judge without a jury. At the conclusion of all the proof His Honor the

Trial Judge found in favor of the defendant and dismissed the plaintiff's suit. From this judgment the plaintiff has brought this appeal in error.

On January 24, 1961, one of the tenants of plaintiff's building had moved out and taken with him his window unit air conditioner. This left a hole in the steel casement window of the apartment and it was necessary to weld back one steel bar and two steel cross pieces which had previously been cut out with a hack saw for the installation of the window unit. The plaintiff's employee, Mr. A. B. Murchison, was charged with the care, maintenance and repair of the building. His title was superintendent.

On the day in question as he had done many times previously, Mr. Murchison called the defendant, Read Sales Company, and had the firm send over a man to weld the metal pieces back into the frame in order that the glass panes might be replaced. The defendant, Read Sales Company, sent over Timothy Cox, colored, aged 24, an employee of eight years' experience who brought with him the necessary welding equipment such as oxygen tank, acetylene torch and hose on a motorcycle with a cart attached.

Mr. Murchison was 75 years of age and had been employed as building superintendent by the plaintiff corporation for two years. He had been in the construction business nearly all of his adult life and had had over forty years' experience in welding. Most of the repairs to the building he did personally.

Mr. Murchison met Timothy Cox at the building. Cox left the oxygen tank on the ground or in the motorcycle cart and only carried the acetylene torch upstairs into the building where the welding was to be done. Mr.

Murchison dropped a rope out the window to the ground and the hose for the torch was attached to the rope and pulled up to the window. After the welding was completed, Cox left the building and returned to Read Sales Company with his equipment. Mr. Murchison remained for about an hour removing the old putty from the frame. Later he went down to his shop located about 25 feet from the end of the building and got an old window pane which he cut for replacement in the window.

After Mr. Murchison cut the glass he noticed that it was twelve o'clock and he decided to eat his lunch before going back to work. He made a pot of coffee and by the time he had finished drinking his coffee a painter ran into the building and told Mr. Murchison the building was on fire. Mr. Murchison called the Fire Department and went immediately to the apartment where the welding had been done and helped remove some valuable guns and books of the new tenant, Dr. Farley.

Plaintiff relied principally upon the testimony of Lt. George W. James of the Memphis Fire Department whose title is Assistant Fire Marshal and investigator. Lt. James testified that after his investigation it was his opinion that sparks from the acetylene welding set fire to fiberboard located under the window sill and inside the wall; that the fire spread horizontally and then upward into the attic area causing the damage sued for. Another witness for the plaintiff, Mr. J. W. Gray, who had been in the welding business over thirty years, testified as an expert that acetylene welding as distinguished from electric welding heats an area much large than that involved in electric welding; that in welding with an acetylene torch the area around the spot to be welded

would be heated as much as two inches in diameter whereas in using an electric welding unit an area no larger than a black-eyed pea would be heated; that welding generates an intense heat of 3000° and precautions must be taken to prevent any combustible material being ignited.

Mr. Murchison, who is no longer employed by the plaintiff, testified for the defendant that the apartment corporation owned no window air conditioning units and that when a new tenant wanted to install a window unit it was necessary to remove some of the glass panes, cut the steel window frame and install the unit; that when the tenant, moved and carried his window unit with him it was necessary to replace the metal portions of the window frame by welding after which the glass panes were replaced.

Mr. Murchison further testified that this process was repeated many times and that he customarily assisted the employee of Read Sales Company in welding the metal pieces into the window by clamping them to the frame so as to hold them steady for the weld. Mr. Murchison testified that after placing the bars in place securely he stepped back for the defendant's employee to apply the welding torch; that he was always present when the welding was done and that he usually furnished a piece of asbestos which he placed on the wooden window sill up against the metal frames so as to keep the sparks from the metal being welded from dropping down and scorching the woodwork. Mr. Murchison testified that he kept the piece of asbestos in his tool kit and felt reasonably sure that he used the asbestos on the day in question; that after the welding was over he saw no signs

of fire or scorching about any of the woodwork around the steel window frame.

On cross examination plaintiff introduced a written statement given by Mr. Murchison to a representative of the Liberty Mutual Insurance Company shortly after the fire. The statement was written in longhand by the agent and signed by Mr. Murchison. Among other things the statement contained the following: "I gave the center section to the colored man, showed him the window, and then he was on his own. I did not tell him how to weld nor what to use to weld with. I had no control or right of control over the Read man."

Defendant also introduced the welder, Timothy Cox, who testified that he did the welding on the day in question, that ordinarily he used some asbestos to prevent the sparks from the welding torch from setting the wood on fire but that on the day in question he didn't use his asbestos because Mr. Murchison had some which he furnished; that nothing unusual happened on the day in question; that after he completed the welding he left and later learned that the building had caught on fire.

The plaintiff also introduced on cross examination a statement which Timothy Cox had given the day after the fire in which he stated among other things, "The welding did cause some sparks, but when I weld close to wood or anything else that might burn, I always put water on it first, then cover it with a metal strip while actually welding. I don't remember if I used water or the metal strip or not on this particular job. I did not see anything that had burned when me and Mr. Murchison inspected after I finished. I have no knowledge of what caused the fire later in the day."

Cox reaffirmed on cross examination that actually he had used water to douse or cool the heated pieces of metal and he did not know why the statement was written as it was except that the statement was written by someone else.

His Honor the Trial Judge found that the fire was set through the negligence of Timothy Cox but that since Arthur B. Murchison was present and made no protest or objection to the manner and means adopted by Timothy Cox for doing the work and tacitly approved the manner and means of doing the work adopted by him that the plaintiff, his superior, East Vollentine Courts, Inc., was guilty of direct and proximate contributory negligence which barred plaintiff's right of recovery.

By appropriate assignments of error the plaintiff insists that the judgment of the lower court should be reversed for three reasons: (1) That His Honor the Trial Judge erroneously held the plaintiff guilty of contributory negligence because the defendant had failed to plead contributory negligence after being ordered to plead specially; (2) that the plaintiff had no duty to supervise or otherwise exercise care to guard against negligence of the defendant, Read Sales Company, who was an independent contractor and (3) that the contributory negligence, if any, of the plaintiff was passive whereas the negligence of the defendant was active and proximate and that therefore the passive contributory negligence, if any, would not bar the plaintiff's recovery.

From the defendant's special plea we quote as follows:

"For further plea the defendant alleges that his employee was directed in the operation in question and was supervised by the plaintiff's superintendent

and at all times during the course of said operation under the control and supervision of plaintiff's superintendent, so that if any damage resulted from said operation it was directly and proximately caused by the negligent supervision of plaintiff's superintendent. Furthermore, defendant says that the entire operation consisted of applying heat to the metal window frames which did not ignite, could not ignite and that the alleged fire was not caused as a result of defendant's operation. Defendant alleges at the time in question the defendant's employee was a servant of the plaintiff.''

■ In our opinion the language of the plea quoted above is sufficient to raise for the defendant the defense of proximate contributory negligence though not pleaded eo nomine. Lively v. Atchley, 1952, 36 Tenn. App. 399, 256 S. W. (2d) 58.

■ Plaintiff insists that the employee of Read Sales Company, Timothy Cox, was an independent contractor and that the plaintiff was under no duty to supervise his work or to guard against his negligence. In our opinion the evidence falls far short of proving an independent contract.

■ We find from the preponderance of the evidence that the superintendent, Mr. Murchison, was in complete charge of the entire welding operation on the day in question as apparently he had been on many occasions before. He clamped the pieces of metal in place and told Cox where and how to weld them back into the frame. In addition, Mr. Murchison assumed the responsibility of trying to prevent a fire from the welding by covering the woodwork with a piece of asbestos.

■ Of course, there are discrepancies between the testimony of Mr. Murchison and Cox and the written statements given by them to the insurance adjuster. It is entirely possible that neither Murchison nor Cox used the piece of asbestos to prevent the sparks from scorching the woodwork or setting fire to the combustible material around the window frame. The preponderance of the evidence is that the fire resulted from the welding operation and both Murchison and Cox were guilty of proximate negligence. Since Mr. Murchison was in full charge of the work being done we hold that his negligence is chargeable to the plaintiff corporation and bars the plaintiff's right to recover from the defendant, Read Sales Company.

■ The general rule is that where the contract is for result, with no control by the person hiring over the acts of the person hired in procuring the contracted result, then the person hired is an independent contractor and if the employer retains the right to direct the manner in which the business shall be done as well as the result to be accomplished, then the person hired is a servant. Tennessee Valley Appliances v. Rowden, 24 Tenn. App. 487, 146 S. W. (2d) 845; Jarratt v. Clinton, 34 Tenn. App. 670, 241 S. W. (2d) 941; Jolly Motor Livery Corp. v. Allenberg, 188 Tenn. 452, 221 S. W. (2d) 513.

We also find that the negligence of Mr. Murchison was active and not passive and therefore the rule of Davis v. Broad Street Garage, 191 Tenn. 320, 232 S. W. (2d) 355; Cohen v. Noel, 165 Tenn. 600, 56 S. W. (2d) 744; Graham v. Miller, 182 Tenn. 434, 187 S. W. (2d) 622, 162 A. L. R. 571, does not come into play.

It follows that all of the assignments of error must respectfully be overruled at the cost of the plaintiff-in-error.

Avery, (P.J.,W.S.), and Bejach, J., concur.