Warren L. SIMPSON and Gertrude Simpson, Plaintiffs-Appellants,

v.

ALLIED VAN LINES, INC., Lanigan Storage and Van Co., Inc., and Nabors Trailers, Inc., Defendants-Appellants.

ALLIED VAN LINES, INC., and Lanigan Storage and Van Co., Inc., (Cross-Claim)

v.

NABORS TRAILERS, INC.

Court of Appeals of Tennessee, Western Section at Jackson.

Oct. 16, 1980.

Permission to Appeal Denied by Supreme Court Feb. 2, 1981.

John B. Mack, Memphis, for plaintiffs-appellants.

Ray A. Bratcher, Memphis, for defendants-appellants and cross-claimants Allied Van Lines, Inc., & Lanigan Storage and Van Co., Inc.

Lee A. Hardison and John R. Cannon, Jr., Memphis, for defendant-appellant Nabors Trailers, Inc.

Before MATHERNE, EWELL and SUMMERS, JJ.

SUMMERS, Judge.

Col. Warren L. Simpson and Gertrude Simpson, husband and wife, the original plaintiffs in this cause, were retiring from the military service and moving from Riverside, California, to Germantown, Tennessee. Their personal property was shipped at the expense of the United States Government. Allied Van Lines, Inc., contracted with the United States Government to be the carrier which transported the Simpsons' furniture to Tennessee. The Simpsons were third-party beneficiaries of the shipment contract between the United States Government and Allied Van Lines.

The property shipped was of two classes insofar as the values were concerned: (1) a high value shipment which carried a value of $16,000.00—this high value shipment was insured by an insurance policy bought by the Simpsons, i. e., a contract between the Simpsons and Allied Van Lines; and (2) a general value shipment of goods which was shipped without a designation of value. The contract carrier's (Allied's) liability for the general value property was to the United States Government (and not to the Simpsons) at the rate of 60 cents per pound. The Simpsons had no contract of insurance on this general value property.

The furniture arrived in Tennessee before the Simpsons, so the furniture was stored by Lanigan Storage and Van Company,

Inc., for a few days, in a trailer which Lanigan had rented elsewhere. Lanigan was the agent of Allied and therefore they stood in the same relationship with the Simpsons and with the defendant, Nabors Trailers, Inc.

When time came to haul the Simpsons' furniture to their new home, Lanigan determined that the trailer housing the furniture had a faulty dolly stand which would not retract sufficiently to allow the trailer to be hitched to a tractor. Lanigan Storage employed Nabors Trailers to come and repair the trailer so that the furniture therein could be hauled to the Simpsons' new home.

During the process of repairing the dolly of the trailer, employees of Nabors Trailers used an acetylene torch to cut the heads of the bolts holding the dolly; the trailer caught fire, and a portion of the property therein was burned.

Most of the high value property was salvaged from the trailer during the fire, and the total damages to this property were $2,124.76. Allied and Lanigan thereafter paid that amount to the Simpsons. It is necessary to keep in mind that the Simpsons had a contract of insurance with Allied on this high value property; therefore, Allied paid the $2,124.76 damages directly to the Simpsons.

In the court below, the Simpsons sued Allied Van Lines, Lanigan Storage, and Nabors Trailers for the damage to their property. Allied and Lanigan filed cross-claims against Nabors Trailers, and Nabors answered the cross-claims alleging that its employees were acting under the direct control of Allied and Lanigan. The trial below was bifurcated as to liability and damages, and both hearings were without a jury.

At the liability hearing, the court found that all the damages in this case resulted from the sole proximate negligence of Nabors Trailers and that Nabors Trailers was therefore liable to the plaintiffs for their damages, and to Allied Van Lines and Lanigan Storage for their expenses and damages, i. e., all parties should recover from Nabors Trailers.

We agree.

On appeal to this Court, Nabors Trailers is the only party presenting the issue of liability for review. Nabors Trailers raises the issues of borrowed servant, non-delegable duty, independent contractor, joint negligence with Allied Van Lines and Lanigan Storage, and also intervening cause.

The two employees of Nabors Trailers, who caused the fire in the trailer in which plaintiffs' property was stored, were said to have been borrowed by Mr. Lanigan of Lanigan Storage, thus relieving Nabors Trailers from liability. The record reveals that Nabors' two servants, Green and Buchanan, obtained an acetylene cutting torch to heat the damaged landing gear in order that it might be straightened with a hammer. When that effort was unsuccessful, Green informed Lanigan that it was necessary for them to remove the legs of the dolly. Lanigan asked Green whether the legs might be saved by removing them entirely, and straightening them at the shop. After some discourse between them, Green and Buchanan began cutting bolts at the top of the trailer's leg so that the dolly might be removed. While this was being done, the trailer caught fire.

The reasoning employed by Nabors Trailers is that Lanigan became the master of Green and Buchanan and that he, Lanigan, retained the right to direct the manner in which the torch was used. There is no showing that Lanigan had any expertise in trailer repair work or acetylene torch use; there is no showing either that the trailer repair business in the first place was a business of Lanigan. The borrowed servant doctrine relied on by Nabors is not applicable. [Nabors relied on *East Vollentine Courts, Inc. v. Foust*, 52 Tenn.App. 449, 376 S.W.2d 320 (1963).]

Green and Buchanan were not Lanigan's employees; the defense of non-delegable duty cannot be available to Nabors Trailers. The duty of care of properly using an acetylene torch was upon Nabors Trailers, and such duty may not now be delegated to Lanigan.

■ Nabors Trailers contended that Lanigan engaged it to perform a dangerous and ultrahazardous job, and that any damage which resulted from the performance of that job must render both Nabors Trailers and Lanigan liable therefor. Though it is true that the duty of safely performing an ultrahazardous task is non-delegable, we think that the trial judge correctly found that Lanigan did not engage Nabors Trailers to perform an ultrahazardous task. *See* 41 *Am.Jur.*2d § 47, at 816.

■ Ordinarily the employer (Lanigan) of an independent contractor (Nabors) is not liable for the negligent acts of the independent contractor. Nabors Trailers contended that even if it was an independent contractor, the employer Lanigan was liable under the rules of *McHarge v. Newcomer*, 117 Tenn. 595, 100 S.W. 700 (1907), because (1) the act complained of was wrongful or tortious, or (2) the injuries were a direct or necessary consequence of the work, or (3) the thing to be done or the manner of its execution involved a duty to the public incumbent upon the employer, or (4) the work contracted for was intrinsically dangerous and performance would probably result in injury or damage, or (5) the employer interfered with the performance of the work.

We are of the opinion that this position is without merit. The record indicates that Lanigan was not in control of the performance of the work, nor did his presence appreciably interfere with Nabors Trailers' performing its duty of repairing the trailer. No fact pointed out by Nabors Trailers brings into play any of the rules of *McHarge v. Newcomer, supra.*

■ Nor does the duty of care imposed upon public carriers by T.C.A. § 47–7–309(1) rescue Nabors Trailers. The damages in this case were caused during a repair of a trailer, not during the business of transporting goods by carrier.

Next, Nabors Trailers contends that the actions of Lanigan Storage amounted to an intervening cause. The argument goes that Lanigan was guilty of negligence in the improper disposal and inadequate security of the goods, and that such negligence was an intervening cause which relieved Nabors Trailers of all liability.

■ We hold that this argument is without merit. The trial court found that the damages were caused by the negligent acts of the Nabors Trailers employees who caused a fire with the acetylene torch during the repair of a trailer. Whether or not there was a negligent care of the damaged goods after the fire has nothing to do with the original causation by Nabors Trailers. An intervening cause, to be used as a defense, must occur at or before the act which causes the damage. The question of the disposal and security of the damaged goods after the fact may go to the question of damages, but not to the causation itself.

At the hearing as to damages, the trial court found that the total damage to the plaintiffs' general shipment property was $42,500.00.

The trial court ordered Nabors Trailers, the sole tortfeasor, to pay plaintiffs Simpson only $32,500.00 on the ground that the United States Government had theretofore paid plaintiffs $10,000.00, under its contractual liability for the shipment.

The trial court gave Allied and Lanigan a judgment against Nabors Trailers for $8,803.96. Prior to the hearing, Lanigan and Allied had paid the United States Government $5,179.20, which was the total amount of the contract carrier liability of Allied and Lanigan, at the rate of 60 cents per pound, on the general value shipment. The trial court awarded Allied and Lanigan this $5,179.20. Further, Allied and Lanigan were allowed to recover from Nabors Trailers the $2,124.76 which they had paid the plaintiffs for damages to their high value shipment, and Nabors Trailers was ordered to pay Lanigan and Allied an additional $1,500.00 as incidental damages for extra guards and storage for the burned goods, and other incidental expenses.

On appeal from the damage awards alone, the plaintiffs presented, as issue No. 1, the striking from the transcript of cer-

tain discovery depositions. In the instant case, portions of the depositions were read into the record, with no objections having been made by the plaintiffs; the depositions were filed and no objections lodged for a period of two years; and, furthermore, the plaintiffs' attorney and all other parties agreed to incorporate each of the depositions into the record. In the case of *Nold v. Selmer Bank & Trust Co.*, 558 S.W.2d 442 (Tenn.App.1977), it was held that the mere filing of a deposition did not make that deposition properly a part of the record on review. But *Nold* did not show that any part of the deposition was ever read into evidence, nor that the deposition was offered or ever received into evidence.

■ Filing of a motion by the plaintiffs was not the proper way to bring this matter before this Court for consideration. Once the trial court had ruled, the matter then became an issue to be presented for review by regular appeal. Therefore, the first issue presented for review is overruled.

The other issues presented by the plaintiffs for review are as follows:

\*　\*　\*　\*　\*　\*

2. The Court of Appeals should find as a fact and award the plaintiffs damages to their *"general shipment"* of household goods in the amount of $63,426.29 and not $42,500.00 as awarded by the Trial Court;

3. The Court of Appeals should find that the plaintiffs' credibility in their proof and exhibits was not discredited, contradicted or impeached in any way and should be accepted as presented;

4. The Court of Appeals should find that the Trial Court rendered only general Findings of Fact on damages contrary to the requirements of Rule 52 of the Tennessee Rules of Civil Procedure;

5.a. The Court of Appeals should find that plaintiffs' damages should not be reduced by the amount of $10,000.00 paid to them by the Federal Government;

b. The Court of Appeals should find that the Trial Court should not have awarded Allied and Lanigan damages of $5,179.20 which they paid on plaintiffs'

*"general shipment"* to the Federal Government;

c. If a reduction of plaintiffs' damages to their *"general shipment"* was proper then the Court of Appeals should find that this reduction should only be in the amount of $5,179.20 and not $10,000.00.

■ The plaintiffs below testified and offered proof that the damage to their general value shipment of property, as distinguished from the high value shipment, was $63,426.00. We have considered whether or not the trial judge was bound to accept the plaintiffs' appraisal of their property loss as being $63,426.00, when the plaintiffs' testimony on the value of the property loss was uncontroverted. *See Clift v. Fulton Fire Ins. Co.*, 315 S.W.2d 9 (Tenn.App.1958).

■ Pursuant to T.C.A. § 27–303 (Renumbered T.C.A. § 27–3–103) and Rule 13(d) of the Tennessee Rules of Appellate Procedure, all cases tried in a court of record without the intervention of a jury and which come to this Court are heard *de novo* upon the record of the Trial Court, accompanied by a presumption of the correctness of the judgment or decree of the Trial Court, unless a preponderance of the evidence is otherwise. *Pettyjohn v. Brown Boveri Corporation*, 63 Tenn.App. 546, 476 S.W.2d 268 (1971).

Therefore, we respectfully overrule the plaintiffs on their second issue. A trial judge is not bound to accept a party's evaluation of his or her own damages.

The trial judge had the benefit of listening to the evidence as presented, he heard testimony as to damages, he had a duty to decide what the lost property was worth, and he had the duty of passing on the credibility of the witnesses. *Shores v. Spann*, 557 S.W.2d 67 (Tenn.App.1977). We have looked at the record *de novo* with a presumption of the trial judge's correctness, and we affirm the trial judge on this issue.

The third and fourth issues raised by the plaintiffs-appellants go to the issue of the proper total value of the damages to the Simpsons' property. We affirm the trial court on these issues.

Allied and Lanigan challenged the $1,500.00 award to Allied and Lanigan from Nabors Trailers for incidental damages as being too low. Allied and Lanigan appeal, claiming that the proof showed $2,660.17 in incidental, or consequential, damages. We affirm the trial judge on that award, our rationale here being as stated above on the value of the general value shipment.

Allied and Lanigan paid directly to the Simpsons $2,124.76 for the loss to their *high value property*. This payment was correct, as the Simpsons had a contract of insurance with Allied on the high value property.

The fifth issue raised by the plaintiffs-appellants goes to the correctness of the $10,-000.00 credit which the trial court allowed to the sole tortfeasor, Nabors Trailers.

█ We have affirmed the trial court's holding that Nabors Trailers was the sole proximate tortfeasor who caused $42,500.00 damage to the plaintiffs' general value property. But the trial judge required Nabors Trailers to pay the plaintiffs only $42,-500.00 minus $10,000.00, i. e., the trial judge gave the tortfeasor, Nabors Trailers, a credit of $10,000.00 on the rationale that the United States Government had already paid $10,000.00 to the Simpsons.

The trial judge in effect placed Nabors Trailers in the same position as the United States Government, the latter of which is not a party to this suit. There is no nexus between Nabors Trailers and the United States Government.

There may have been a nexus between the United States Government and the Simpsons; and the United States Government may have had, or may still have, a right, under the theory of subrogation, by its own suit to deprive the Simpsons of the $10,000.00 which the United States Government had already paid to the Simpsons. But the United States Government may have waived that right. The record simply does not reveal any basis upon which we can force the United States Government to enforce its right of subrogation against the Simpsons in the case at bar.

*Anderson v. Miller*, 96 Tenn. 35, 33 S.W. 615 (1895), was a case involving valued insurance proceeds where the plaintiff had been paid in full by her insurance company for the full loss to her house and yet brought suit in her own name against the tortious party. The *Anderson* court held:

... If it be conceded that the insurance company, having paid the entire fire loss, is now entitled to be subrogated to the rights of the insured as against the tortfeasor, or to recover back from him the amount he recovers, still it does not prevent a recovery in the name of the insured for the damage sustained. The question of who will be entitled to the proceeds of the recovery, the insurer or the insured, is a matter between them, and constitutes no defense to an action for the damages caused by the wrong which, in any event, must be brought in the name of the owner and insured, although it might be for the use of the insurer. . . .

... 'It is not a question of importance in this inquiry, whether the act of the defendant caused the loss or not; his equitable claim to the reduction of damages, if he could have any, would spring from the fact that the plaintiff recovers pay for his property twice; but the answer to this is, that he recovers but once for the wrong done him, and he receives the insurance money upon a contract to which the defendant is in no way privy, and in respect to which his own wrongful act can give him no equities.' *Perrott v. Shearer*, 17 Mich.Rep., pp. 55, 56. . . . The transaction between the insurers and the owners of the property injured were matters in which the wrongdoer had no concern, and which do not affect the measure of his liability.

.     .     .     .     .

The trial court erred in allowing the $10,-000.00 credit to the tortfeasor, Nabors Trailers. If a credit were allowed to anyone, only the United States Government might conceivably have had a right to that credit, but only if the United States Government had been a party to the lawsuit.

■ The United States Government was not entitled to an award of damages. The rule in Tennessee is that a cause of action cannot be split. See *Stapp v. Andrews,* 172 Tenn. 610, 113 S.W.2d 749; *Globe Fire Ins. Co. v. Cleveland,* 162 Tenn. 83, 34 S.W.2d 1059; *National Cordova Corp. v. City of Memphis,* 214 Tenn. 371, 380 S.W.2d 793 (1964). The damage done to the general value goods was $42,500.00. Since the United States Government was not a party to the lawsuit and a cause of action in Tennessee cannot be split, the trial court could not properly give the credit.

■ Allied and Lanigan paid $5,179.20 to the United States Government under a contractual obligation based on the rate of 60 cents per pound for the damaged general value goods. The trial court's award to Allied and Lanigan of an $8,803.96 judgment against Nabors Trailers included the $5,179.20 in question.

To award Allied and Lanigan the $5,179.20 from Nabors Trailers would be to increase, erroneously, the $42,500.00 evaluation of the loss to the general value shipment by $5,179.20. Allied and Lanigan are not entitled to take any part of the $42,-500.00 awarded to the Simpsons. Allied and Lanigan paid the $5,179.20 to the United States Government, who was not before the trial court. The method which Allied and Lanigan employ to recover the $5,179.20, or whether they recover it at all, is not a concern of this Court under the issues presented in the record.

We must reverse the trial court insofar as it required Nabors Trailers to pay $5,179.20 to Allied and Lanigan.

Therefore, the judgment of the trial court is modified to the extent that the $10,000.00 credit given to Nabors Trailers on its $42,500.00 obligation to the Simpsons is disallowed; and the $8,803.96 obligation of Nabors Trailers to Allied and Lanigan is reduced by the amount of $5,179.20.

The modified judgment of this Court is as follows: A judgment in the amount of $42,-500.00 is awarded to the plaintiffs below, against Nabors Trailers. A judgment in the amount of $3,624.76 is awarded to the defendants and cross-claimants below, Allied and Lanigan, against Nabors.

The judgment of the trial court as herein modified is affirmed, and this cause is remanded to the Circuit Court of Shelby County, Tennessee, for the enforcement of this judgment. The cost of this appeal is adjudged against Nabors Trailers, Inc., for which execution may issue if necessary.

MATHERNE, and EWELL, JJ., concur.