## IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE

| | | |
|---|---|---|
| AMY TYLER, | ) | |
| | ) | **FILED** |
| Plaintiff/Appellant, | ) | Williamson Circuit No. 96361 |
| | ) | November 24, 1998 |
| VS. | ) | Appeal No. 01A01-9711-CV-00661 |
| | ) | Cecil W. Crowson |
| LARRY MORGAN, d/b/a LARRY | ) | Appellate Court Clerk |
| MORGAN CONST. COMPANY, | ) | |
| UNITED CITIES GAS CO., ROGER P. | ) | |
| DYE, d/b/a ROGER DYE CONST. | ) | |
| CO., MURRAY TATUM, QUAD | ) | |
| STATES, INC., | ) | |
| | ) | |
| Defendants/Appellees. | ) | |

APPEAL FROM THE CIRCUIT COURT OF WILLIAMSON COUNTY
AT FRANKLIN, TENNESSEE
THE HONORABLE CORNELIA A. CLARK, JUDGE

**WILLIAM B. BRADLEY**
**BARRY GARDNER**
Brentwood, Tennessee
Attorneys for Appellant

**DOUGLAS FISHER**
**HOWELL & FISHER, PLLC**
Nashville, Tennessee
Attorney for Appellees Larry Morgan
d/b/a Larry Morgan Const. Co. And
United Cities Gas Co.

**JAMES D. KAY, JR.**
**BRIDGETT A. WOHLPART**
Nashville, Tennessee
Attorneys for Appellee Roger P. Dye
d/b/a Roger P. Dye Const. Co.

**KENT E. KRAUSE**
**SHARON E. ENGLAND**
**BREWER, KRAUSE & BROOKS**
Nashville, Tennessee
Attorneys for Appellees Murray Tatum
and Quad States, Inc.

**AFFIRMED**

**ALAN E. HIGHERS, J.**

**W. FRANK CRAWFORD, P.J., W.S. - DISSENTS**

**DAVID R. FARMER, J. - CONCURS**

In this personal injury action, Plaintiff Amy Tyler appeals the trial court's final order entering summary judgment in favor of the Defendants/Appellees and dismissing Tyler's complaint. For the reasons hereinafter stated, we affirm the trial court's judgment.

At about 9:00 on the evening of May 27, 1995, Tyler was walking down a sidewalk at the Southwind Apartments in Franklin when she tripped and fell, breaking both of her arms. After her fall, Tyler discovered that she had tripped over a string which had been stretched across the sidewalk. Earlier that day, Defendants Murray Tatum and Quad States, Inc., had poured a new sidewalk on the portion of the sidewalk where Tyler fell. Although the newly-poured concrete was dry, the wooden forms that Tatum and his workers used to pour the concrete were still in place. The string was attached to two wooden stakes which made up part of the forms.

As a result of her injuries, Tyler filed this lawsuit against the following parties: (1) United Cities Gas Company, which had contracted to have a natural gas line installed under the sidewalk; (2) Larry Morgan, the contractor responsible for installation of the gas line; (3) Roger P. Dye, Morgan's subcontractor who actually performed the installation of the gas line; (4) Murray Tatum, Dye's subcontractor who poured the new sidewalk after the gas line was installed; and (5) Quad States, Inc., Tatum's employer. Tyler also sued Southwind Limited Partnership, the owner of the apartment complex; however, she later agreed to dismiss Southwind from this lawsuit. The remaining Defendants moved for summary judgment, and the trial court granted their motions. This appeal followed.

We begin our analysis with the well-established rule that "the party seeking summary judgment has the burden of demonstrating to the court that there are no disputed, material facts creating a genuine issue for trial." Byrd v. Hall, 847 S.W.2d 208, 215 (Tenn. 1993). Once the party seeking summary judgment makes a properly supported motion, the burden shifts to the nonmoving party to present evidence or to point to specific evidence in the record demonstrating the existence of a disputed material fact which needs to be resolved by the trier of fact. Id. In evaluating a motion for summary judgment, the

2

court is required to view the evidence in the light most favorable to the nonmoving party and to draw all reasonable inferences from the evidence in the nonmoving party's favor. Id.

A disputed fact is material if proof thereof would negate or establish an essential element of the plaintiff's claim. McCarley v. West Quality Food Serv., 960 S.W.2d 585, 588 (Tenn. 1998). In the present case, in order to recover from the Defendants for injuries caused by the alleged dangerous or defective condition, Tyler was required to establish either (1) that the Defendants created the condition or (2) that the Defendants had actual or constructive notice of the condition prior to Tyler's injury. Hardesty v. Service Merchandise Co., 953 S.W.2d 678, 682 (Tenn. App. 1997). Accordingly, in the summary judgment proceedings below, the parties focused on evidence that tended to support or negate Tyler's claim that the Defendants were responsible for placing the string across the sidewalk.

In moving for summary judgment, the Defendants relied on the following evidence. Murray Tatum, the vice president of Quad States, testified in his deposition that he and Roger Dye entered into a verbal contract for Tatum and other Quad States employees to pour the sidewalk. The employees poured the concrete for the sidewalk between 12:00 noon and 1:00 p.m. on Friday, May 27, 1995. By 2:30 or 3:00 p.m., when Tatum left the job site for the weekend, the employees had finished pouring and "brooming" the concrete. Tatum testified that, by 3:30 or 4:30 p.m., the concrete would have been dry enough to walk on.

Tatum further testified that, when he left the job site, no one had placed a string across the sidewalk. Tatum had been in the concrete business for over forty years, but he never had placed a string across the sidewalk in the manner alleged by Tyler, he never had instructed any of his workers to place a string across the sidewalk, and he never had observed any of his workers doing so. Tatum testified that, in any event, the string depicted in the photographs presented by Tyler was not the type of string Tatum used in his work.

3

The string in the photographs appeared to be brown twine, but Tatum used only white or fluorescent nylon string.

Willie Whitsett, Quad States' foreman, corroborated Tatum's testimony. In an affidavit, Whitsett stated that he and four to six workers formed, poured, and finished the section of the sidewalk on a Friday in May 1995. Whitsett and his workers poured the concrete between 12:00 noon and 1:00 p.m., and they then "broomed" the concrete. Neither Whitsett nor anyone in his crew placed a string across the sidewalk. When Whitsett and his workers left the job site later that afternoon, the concrete was dry enough to walk on and there was no string on either end of the newly-poured sidewalk.

In opposing the Defendants' motions for summary judgment, Tyler relied on the deposition of her uncle, Kenneth Bruce Bearden, and the affidavit of a neighbor, Frank Schmell. Frank Schmell noticed the string stretched across the sidewalk on Friday, May 27, 1995. As for the time frame in which Schmell observed the string, Schmell stated only that he noticed the string "after the concrete was poured" and "during the daytime hours." Schmell's affidavit did not state whether any workers were present when he observed the string, nor did the affidavit mention even observing any workers present on the day in question.

Kenneth Bruce Bearden did not observe the string stretched across the sidewalk until after Tyler fell. Bearden, who also had worked in the concrete business for a number of years, testified that the string appeared to have dried concrete on it as if it was the same string used by the workers to set the wooden forms for the sidewalk in place. Earlier that day, Bearden had a conversation with the workers right after they finished pouring the sidewalk. Bearden estimated that the conversation took place at about 5:00 or 5:30 p.m. During their conversation, Bearden warned the workers that they had "better barricade this up good because, . . . people travel this walk." According to Bearden, the workers assured him that they would put up a barricade.

4

In light of this conversation, Bearden assumed that the workers were responsible for placing the string across the sidewalk. Bearden, however, had no personal knowledge as to who placed the string across the sidewalk. Bearden did not witness any of the workers place the string across the sidewalk, nor did he observe any string stretched across the sidewalk while he was conversing with the workers. When Bearden left the workers, the stakes were in place but there was no string across the sidewalk.

After carefully reviewing the foregoing evidence, we affirm the trial court's orders of summary judgment entered in favor of the Defendants. The Defendants filed properly supported motions for summary judgment in which they affirmatively negated an essential element of Tyler's claim. Both Murray Tatum and Willie Whitsett stated under oath that neither they nor any other Quad States employee placed the string across the section of the sidewalk where Tyler fell. In order for her claim to survive the Defendants' motions for summary judgment, therefore, Tyler was required to present or point to evidence which, if proven, would establish that one of the Defendants was responsible for creating the dangerous condition which caused her injury.

We conclude that Tyler's proof fails on this issue. Based on his conversation with the Quad States workers, Kenneth Bruce Bearden assumed that the workers were responsible for placing the string across the sidewalk. Neither Bearden nor Frank Schmell, however, attested to any personal knowledge that would implicate any of the Defendants in placing the string across the sidewalk. Bearden did not see any of the workers place the string across the sidewalk, and when he left the workers that day, there was no string across the sidewalk. Although Frank Schmell observed the string across the sidewalk sometime "during the daytime hours," he likewise did not see any of the workers place the string across the sidewalk, nor did he observe the string in place while any of the workers were still present.

We recognize that a defendant's creation or knowledge of a dangerous condition may be proven by either direct or circumstantial evidence. Martin v. Washmaster Auto Ctr.,

5

946 S.W.2d 314, 317 (Tenn. App. 1996); Keene v. Cracker Barrel Old Country Store, Inc., 853 S.W.2d 501, 504 (Tenn. App. 1992); Benson v. H.G. Hill Stores, Inc., 699 S.W.2d 560, 563 (Tenn. App. 1985). In the absence of proof as to when and how a dangerous condition came about, however, the courts may not permit the jury to speculate on these vital elements. Hardesty v. Service Merchandise Co., 953 S.W.2d 678, 683 (Tenn. App. 1997); Ogle v. Winn-Dixie Greenville, Inc., 919 S.W.2d 45, 47 (Tenn. App. 1995). As this court previously stated,

> [A] case will not be submitted to a jury upon mere speculation. "A case does not have to be submitted to a jury where there is a mere spark or glimmer of evidence. There must be some evidence of a material and substantial nature." Sadek v. Nashville Recycling Co., 751 S.W.2d 428, 431 (Tenn. App. 1988).

Jones v. Golden, No. 03A01-9108-CV-00269, 1991 WL 238275, at *2 (Tenn. App. Nov. 18, 1991).

Based on the evidence presented in this case, a jury could infer that somebody placed the string across the sidewalk sometime between 5:30 p.m. and sunset. Bearden stated that the string was not in place when he left the workers at about 5:30 p.m., but Schmell's affidavit revealed that he observed the string sometime "during the daytime hours." Moreover, because of the presence of dried concrete on the string, the jury could infer that the string came from the construction site itself or, at the very least, from another site where concrete had been poured. Nevertheless, we do not view this evidence as being of a material and substantial nature because, without more, the evidence requires the jury to speculate as to who placed the string across the sidewalk and as to when this dangerous condition was created. Accordingly, we hold that the trial court properly granted the Defendants' motions for summary judgment.

In urging this court to reverse the trial court's summary judgments, Tyler argues that, regardless of who placed the string across the sidewalk, the Defendants were negligent in failing to place a barricade or warning sign at the construction site to protect the public. We conclude that this argument is without merit. The evidence presented below indicated that the newly-poured sidewalk did not constitute a dangerous condition for the public. It

6

was undisputed that, at the time Whitsett and his workers left the construction site, the concrete was dry enough to walk on and, thus, no barricade was needed to keep pedestrians off of the sidewalk. Although Bearden discussed the need for a barricade with the workers, his testimony did not contradict Whitsett's assertion that the concrete had dried sufficiently by the time Whitsett and the other workers left to render the use of a barricade unnecessary. Bearden talked to the workers after they had finished pouring the concrete, but he did not testify regarding the degree to which the concrete had dried. Other than the string stretched across the sidewalk, therefore, the record contains no evidence that the newly-poured sidewalk presented a dangerous condition for pedestrians. Absent evidence that the Defendants either created or knew about the string stretched across the sidewalk, Tyler's claims of negligence must fail.

Citing language in the contract between United Cities Gas Company and Larry Morgan, Tyler alternatively argues that this contract imposed a duty upon the Defendants to inspect the construction site and to ensure the public's safety by erecting barricades and taking other safety precautions. Inasmuch as Tyler has failed to allege that she was a third-party beneficiary of the contract between the Gas Company and Morgan, however, we reject the argument that this contractual duty extended to Tyler. Speaker v. Cates Co., 879 S.W.2d 811, 816 (Tenn. 1994); United Am. Bank v. Gardner, 706 S.W.2d 639, 642 (Tenn. App. 1985). We likewise reject Tyler's contention that the construction of the sidewalk was inherently dangerous work such as to impose an absolute, nondelegable duty on any of the parties in this case to ensure the safety of the site. Marshalls of Nashville, Tennessee, Inc. v. Harding Mall Assocs., 799 S.W.2d 239, 243-44 (Tenn. App. 1990). Simpson v. Allied Van Lines, Inc., 612 S.W.2d 172, 174-75 (Tenn. App. 1980).

Defendants Tatum and Quad States also have raised an issue on appeal, contending that the trial court erred in denying their motion for discretionary costs. The award of discretionary costs is governed by rule 54.04(2) of the Tennessee Rules of Civil Procedure. Pursuant to this rule, costs not included in the bill of costs, i.e. discretionary costs, "are allowable only in the court's discretion." See T.R.C.P. 54.04(2). This court will

7

not interfere with an award or denial of discretionary costs except upon an affirmative showing that the trial court abused its discretion. Perdue v. Green Branch Mining Co., 837 S.W.2d 56, 60 (Tenn. 1992); In re McCoy, No. 03A01-9604-CH-00143, 1996 WL 599703, at *7 (Tenn. App. Oct. 21, 1996), perm. app. denied (Tenn. Apr. 7, 1997); Ashford v. Benjamin, No. 02A01-9311-CV-00243, 1994 WL 677607, at *2 (Tenn. App. Dec. 6, 1994); Faux v. Spears, No. 03A01-9312-CV-00433, 1994 WL 147830, at *2 (Tenn. App. Apr. 26, 1994).

Generally, trial courts award such costs to whichever party ultimately prevails in the lawsuit, provided the prevailing party has filed a timely, properly supported motion. Turner v. Turner, No. 01A01-9506-CV-00255, 1997 WL 136448, at *17 (Tenn. App. Mar. 27, 1997); Austin Powder Co. v. Thompson, No. 03A01-9607-CV-00229, 1996 WL 718291, at *2 (Tenn. App. Dec. 16, 1996); Dent v. Holt, No. 01A01-9302-CV-00072, 1994 WL 440916, at *3 (Tenn. App. Aug. 17, 1994), modified on other grounds, 1994 WL 503891 (Tenn. App. Sept. 16, 1994); Harmon v. Shell, No. 01A01-9211-CH-00451, 1994 WL 148663, at *7 (Tenn. App. Apr. 27, 1994). The successful party, however, is not automatically entitled to an award of costs. See Benson v. Tennessee Valley Elec. Coop., 868 S.W.2d 630, 644 (Tenn. App. 1993); Faux v. Spears, 1994 WL 147830, at *2; Webber v. Bolling, 1989 WL 151496, at *4 (Tenn. App. Dec. 13, 1989). Instead, trial courts are free to apportion costs between the litigants as the equities of each case demand. Perdue v. Green Branch Mining Co., 837 S.W.2d at 60; In re McCoy, 1996 WL 599703, at *7; Christian v. Harding, 1993 WL 156164, at *1 (Tenn. App. May 14, 1993). Accordingly, if any equitable basis appears in the record which will support the trial court's apportionment of costs, this court must affirm. See, e.g., Benson v. Tennessee Valley Elec. Coop., 868 S.W.2d at 644 (holding that trial court did not abuse its discretion in failing to award costs to successful plaintiffs, in light of large amount of jury verdicts in plaintiffs' favor); cf. Dent v. Holt, 1994 WL 440916, at *3 (holding that trial court abused its discretion in denying prevailing party's motion for discretionary costs where no basis for such denial appeared in record). On appeal, the appellant bears the burden of showing that the trial

court abused its discretion in its assessment of costs.  <u>Faux v. Spears</u>, 1994 WL 147830, at *2.

Applying the foregoing standard, we affirm the trial court's decision to deny Tatum's and Quad States' motion for discretionary costs.  After conducting a hearing on the motion for discretionary costs, a transcript of which does not appear in the appellate record, the trial court denied the motion.  In support of its denial, the trial court reasoned that this case was disposed of by summary judgment relatively early in the life of the lawsuit and, further, that Defendants Tatum and Quad States were better able to afford the discretionary costs than Tyler.   Under these circumstances, Tatum and Quad States have failed to meet their burden of showing that the trial court abused its discretion in denying their motion for costs.

The judgment of the trial court is hereby affirmed.  Costs of this appeal are taxed to the Plaintiff, for which execution may issue if necessary.

_____
HIGHERS, J.

_____
CRAWFORD, P.J., W.S. - Dissents

_____
FARMER, J. - Concurs

9